## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

PVC WINDOORS, INC., a Florida Corporation,

        Plaintiff,

    vs.                          Civil Case No.: 1:07-cv-22257

BABBITBAY BEACH CONSTRUCTION, N.V.
a Sint Maarten Company, BABBITBAY BEACH
DEVELOPMENT CORPORATION, B.V., a Sint
Maarten Closed Company, COLUMBIA PROPERTIES
ST. MAARTEN, LLC, an Anguillan Limited Liability
Company, SUN MARTIN LIMITED, an Anguillan
Dissolved Corporation, by and through their last
Board of Directors, and COLUMBIA SUSSEX
CORPORATION, a Kentucky Corporation,

        Defendants.

_____/

### AMENDED COMPLAINT[1]

    Plaintiff, PVC WINDOORS, INC., a Florida corporation (hereinafter "PVC"), by and

through undersigned counsel, hereby sue the Defendants, BABBITBAY BEACH

CONSTRUCTION, N.V. (hereinafter "Construction"), a Sint Maarten company, BABBITBAY

BEACH DEVELOPMENT CORPORATION, B.V. (hereinafter "Development"), a Sint Maarten

closed company, COLUMBIA PROPERTIES ST. MAARTEN LLC (hereinafter "Columbia"),

an Anguillan limited liability company, SUN MARTIN LIMITED (hereinafter "Sun"), an

Anguillan dissolved corporation, by and through their last board of directors, and COLUMBIA

---

[1] The initial Complaint in this cause was filed in the Eleventh Judicial Circuit in and for Miami-Dade county Florida and served on the Sussex Parties on or about June 12, 2007. On or about August 28, 2007, the Sussex Parties removed this action to this Court. Following the removal, the Sussex Parties filed their Motion to Dismiss PVC's Complaint. Since the Motion to Dismiss filed by the Sussex Parties is not a responsive pleading for purposes of Rule 15(a) of the Federal Rules of Civil Procedure, PVC is hereby filing this Amended Complaint as a matter of course pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a); *McGruder v. Phelps*, 608 F.2d 1023 (5th Cir. 1979).

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

SUSSEX CORPORATION (hereinafter "Sussex"), a Kentucky corporation (collectively referred to from time to time as the "Sussex Parties") and states as follows:

## NATURE OF ACTION

1.      PVC is a Florida corporation who was fraudulently induced into executing various agreements with the Sussex Parties.  The Sussex Parties, after inducing PVC into those various agreements, materially breached those agreements in Florida.  Moreover, Sussex engaged in an orchestrated scheme to insulate itself from any liability for its aforementioned illegal actions by creating various shell entities throughout the world and forcing PVC into executing various agreements with such entitites.  PVC therefore initiates this action in order to recover from the Sussex Parties all the damages PVC has suffered due to the Sussex Parties' illegal actions.

## JURISDICTION AND VENUE

2.      This is a civil action for monetary damages which exceed the sum of Seventy-Five Thousand Dollars and No/00 ($75,000.00), exclusive of interest, attorneys' fees and costs.

3.      This civil action is by and between PVC, a Florida corporation, and the Sussex Parties, who are entities foreign to the State of Florida as described *infra*.

4.      The Florida Long Arm statute states, in pertinent part, that:

(1)      Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(b)   *Committing a tortious act within this state.*

(g)   *Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.*

2

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

Fla. Stat. §48.193 ("Acts subjecting a person to jurisdiction of courts of [the] state [of Florida]") (emphasis added).

5.      The wrongful acts described herein, namely the tortious conduct which occurred in Florida, as described *infra*, and the material breaches of the agreements and guarantee, as described *infra*, subjected all of the Sussex Parties to personal jurisdiction in Florida pursuant to Fla. Stat. §§48.193(b) and (g).

6.      This Court therefore has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a) and pursuant to Fla. Stat. §§48.193(b) and (g).[2]

7.      This Court has pendant and supplemental jurisdiction over all state law claims which may arise herein pursuant to 28 U.S.C. §1367(a)[3].

8.      Titles 28 U.S.C. §2201 and 22 U.S.C. §2202 grants jurisdiction to this Court for purposes of providing declaratory and further related relief as requested herein.

9.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §1391(a)(2) and 28 U.S.C. §1391(a)(3). The Sussex Parties committed a substantial portion of the acts and omissions complained of herein within the Southern District of Florida. The Southern District of Florida is the place where the breach of contracts between the parties occurred, which breaches occurred when the Sussex Parties failed to make payment to PVC in Miami-Dade County, Florida. The Southern District of Florida is also the place where the Sussex Parties committed the various tortious acts against PVC, *as described infra*, including the fraudulent inducement of PVC to enter into the various agreements and guarantee as described more particularly below. Thus, the Southern District of Florida is the place where the economic damages to PVC occurred

---

[2] The initial Complaint was removed to this Court by the Sussex Parties pursuant to 28 U.S.C. §1441.
[3] Assuming *arguendo* that the initial Counts in the Amended Complaint are dismissed, this Court still has jurisdiction over the Alternative Counts alleged *infa* pursuant to 28 U.S.C. §1332(a) and Fla. Stat. §§48.193.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

due to the Sussex Parties actions.  Moreover, a number of the Sussex Parties' defendants are aliens subject to venue in the Southern District of Florida pursuant to 28 U.S.C. §1391(d).

## PARTIES

10.     PVC is and was, at all material times, a Florida corporation with its principal place of business in Miami-Dade County, Florida.

11.     Sussex is and was, at all material times, a Kentucky Corporation with its principle place of business in Fort Mitchell, Kentucky.

12.     Construction is and was, at all material times, a Sint Maarten company with its principle place of business in Fort Mitchell, Kentucky.

13.     Construction is and was, at all material times, the alter ego and mere instrumentality of Sussex.

14.     Development is and was, at all material times, a Sint Maarten closed company with its principle place of business in Fort Mitchell, Kentucky.

15.     Development is and was, at all material times, the alter ego and mere instrumentality of Sussex.

16.     Columbia is and was, at all material times, an Anguillan limited liability company with its principle place of business in Fort Mitchell, Kentucky.

17.     Columbia is and was, at all material times, the alter ego and mere instrumentality of Sussex.

18.     Sun is and was, at all material times, a dissolved Anguillan corporation with its principle place of business in Fort Mitchell, Kentucky.

19.     Sun was, at all material times, the alter ego and mere instrumentality of Sussex.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

## STATEMENT OF FACTS

### The Material Misrepresentations of the Sussex Parties

20.     On or about early 2005, Sussex conducted regular activities in the State of Florida directed at entities such as PVC.  Amongst Sussex's activities in Florida were Sussex's requests to contractors in Florida to submit bids to it regarding conducting construction work to a construction project of what would become the Dawn Beach Resort & Spa and Dawn Beach Resort Condominium a/k/a the Westin St. Maarten in Sint. Maarten (hereinafter the "Project"), as well as providing construction materials to the Project.

21.     On or about November, 2005, Sussex repeatedly requested to PVC in Florida that it submit a bid to Sussex for constructing and installing the windows and doors at the Project.

22.     During the negotiations between Sussex and PVC, which negotiations occurred in part in Florida and via telephonic and other electronic means in Florida, Sussex represented to PVC that Sussex was the owner of the Project, controlled the Project, owned the Project site, and, hence, would deal with PVC regarding the Project, including paying PVC for its construction and installation of the windows and doors at its offices in Florida pursuant to written requests regarding same, as outlined in the agreements described *infra*.  Moreover, Sussex represented to PVC that if it would submit a bid for the Project, Sussex would use PVC in other projects owned and operated by Sussex.

23.     Relying on the aforementioned representations, on or about January, 2006, PVC and Sussex, in part in Florida and via telephonic and other electronic means in Florida, agreed to enter into a written agreement in which PVC would construct and install the windows and doors at the Project.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

24.     Due to the afore-described negotiations, Sussex's representations, and the agreement to execute a written contract, PVC expanded its manufacturing facilities, purchased new equipment and materials, hired new workers, which workers were fore borne from pursuing lucrative business opportunities with other unrelated parties, reserved its manufacturing capabilities to fulfill the requirements of the Sussex Parties, and set aside capital in order to fulfill its obligations under what PVC expected would become the subsequent written agreements with Sussex. PVC also had to forgo other profitable contractual opportunities in order to gear up to fulfill its anticipated contractual obligations with Sussex due to Sussex's afore-described representations.

25.     Although PVC was advised and believed that it would be contracting with Sussex, before entering into any written agreement with Sussex, Sussex informed PVC on or about February, 2006, in part in Florida and via telephonic and other electronic means in Florida, that it, PVC, would have to enter into written agreements with Development and Construction.

26.     The Sussex Parties represented to PVC on or about February, 2006, which representations occurred again in part in Florida and via telephonic and other electronic means in Florida, that 1) Sussex was the real party in interest of the subject matter of the subject agreements that PVC would enter into with Development and Construction, 2) that if PVC entered into the Agreements, Sussex would guaranty payment and performance of such agreements as the primary beneficiary and leading object to such agreements (hereinafter referred to as the "guarantee"), 3) that the Sussex Parties would perform their obligations under any agreements made with respect to the Project, 4) that Construction owned the Project site, 5)

that Development and Construction controlled the Project, and 6) that Sussex would use PVC in other projects owned and operated by Sussex.

27.     The Sussex Parties, at the time it made the afore-described representations to PVC, had the secret and undisclosed intention of not honoring the guarantee of Sussex or fully performing all of the Sussex Parties obligations under any agreements made in conjunction with the Project.

### PVC's Damages as a Result of the Sussex Parties' Representations

28.     Due to its reliance on the Sussex Parties' representations, which representations where made not only on behalf of Sussex, but also on behalf of the remainder of the Sussex Parties, PVC invested substantial funds in order to expand its manufacturing facilities, purchased new equipment and materials, expanded its work force, which work force was fore borne from pursuing lucrative business opportunities with other unrelated parties, reserved its manufacturing capabilities to fulfill the requirements of the Sussex Parties, and reserved its capital for same, which capital would have been expended in other business ventures with unrelated parties if not for the Sussex Parties requests, in order to manufacture and install windows and doors at the Project.  Additionally, at the special insistence and request of Sussex due to their afore-described misrepresentations, PVC entered into two separate agreements with Development and Construction, which PVC would not have otherwise have entered into without the Sussex Parties' afore-described misrepresentations.  PVC would not have suffered any of these damages had the Sussex Parties not made the afore-described misrepresentations to PVC.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

### The Agreements with Sussex and Sussex's Shell Entities

29.     On or about February 17, 2006, PVC entered into a construction agreement (hereinafter "Agreement1") with Development to provide services, materials, equipment, and other items in connection with the construction of the Project. A copy of Agreement1 is attached hereto as **EXHIBIT A**.

30.     On or about February 17, 2006, PVC also entered into a construction agreement (hereinafter "Agreement2") with Construction to provide labor in connection with services, materials, equipment, and other items with regard to the construction of the Project. Agreement2 is virtually nothing more than a copy of Agreement1 edited to incorporate Construction in the place of Development within the contract. (Agreement1 and Agreement2 shall be hereinafter collectively referred to from time to time as the "Agreements"). A copy of Agreement2 is attached hereto as **EXHIBIT B**.

31.     Following the execution of the Agreements, the Sussex Parties modified the Agreements through their pattern of dealings and course of performance so that Sussex, among other things, assumed the role of the primary obligor under the Agreements, and, further, through a pattern of dealing and course of performance, modified the Agreements in a manner more fully described *infra*.

### Sussex as the True Party in Interest

32.     Sussex is the true owner of the Project. Sussex's has and continues to represent to the public that it owns the Project. A copy of Sussex's website, http://www.columbiasussex.com/cscbybrand.lasso, titled Columbia Sussex Hotel Properties, naming the Project as one of Sussex's properties, news excerpts released by Sussex and/or

8

pertaining to Sussex naming the Project as Sussex's property, and a certificate of liability insurance showing Sussex as Certificate Holder are attached hereto as **COMPOSITE EXHIBIT C**.

33.     In a typical press release of Sussex, Sussex held out to the general public that "[t]he Westin St. Maarten Dawn Beach Resort & Spa and the adjacent Westin St. Maarten Dawn Beach Residences[, i.e. the Project,] on the scenic island of St. Maarten ...offer 310 luxurious guest rooms, suites, oceanfront dining, a full-service spa, casino, a wide array of amenities and expansive meeting and event venues. The 99-unit Westin St. Maarten Dawn Beach Residences will be located on the resort grounds offering owners full access to the resort's services and amenities. The property will fly the Westin flag under a license agreement and is owned and managed by Columbia Sussex, owner, developer and operator of more than 85 hotels around the world...[The Project] is situated on the Dutch side of the island and high up on one of the island's pristine 37-plus beaches on just 37 square miles, the [Project]...[is] a luxurious tropical paradise...[M]ost accommodations boast ocean-views, all of exquisitely appointed guest rooms and suites will feature balconies with French doors, upscale amenities and oversized bathrooms...."     See   Starwood   Hotels   &   Resorts'   Worldwide,   Inc.   release, http://www.flyertalk.com/forum/showthread.php?page=1&t=498897,     in     **COMPOSITE EXHIBIT C**.

34.     In fact, Sussex's trade is to own and operate projects, such as the Project. Sussex, in fact, "develops and manages some 80 hotels and casinos in about 30 states [and foreign countries].   Its hotels operate under banners such as Crown Plaza, Holiday Inn, Marriot, Renaissance, Sheraton, and Weston. The company's 13 casino properties are located in

Mississippi (Vicksburg Casino, Lighthouse Point), Louisiana (Amelia Belle, Belle of Baton Rouge), and Nevada (Tropicana Las Vegas, Westin Las Vegas, and Lake Tahoe Horizon), among other states. Colombia Entertainment, the casino affiliate of Columbia Sussex, in 2007 purchased Aztar Corporation, owner of Tropicana, for $2.1 billion. President and CEO William Yung and his family own [sic] Columbia Sussex. Mr. Yung founded the Kentucky-based company in 1972." A copy of Hoovers, a D&B Company, website, http://www.hoovers.com/columbia-sussex/--ID__110113--/free-co-factsheet.xhtml, giving an overview of Sussex is attached hereto as **EXHIBIT D**.

35.    The Project's estimated cost to Sussex is in excess of One Hundred Twenty Million Dollars and No/00 (U.S. $120,000,000.00). A copy of the news article from Lake Tahoe, Nevada, http://newsblaze.com/story/2006082207450300001.ew/topstory.html, disclosing this estimate is attached hereto as **EXHIBIT E**.

<u>**Sussex's Shell Corporations**</u>

36.    Sussex, in order to attempt to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants and its creditors and to be able to breach the Agreements with PVC with impunity, created Development, Sun, Construction, and Columbia.

37.    Sussex, in order to attempt to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants and its creditors, such as PVC, created, in Anguilla, Sun and Columbia.

38.    Sussex, in order to attempt to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants and its creditors, such as PVC, used Sun to create Development. Development's sole shareholder, at all material times, was Sun. A copy of the articles of

incorporation of Development and the Kentucky Secretary of State's information on Sussex are attached hereto as **COMPOSITE EXHIBIT F.**

39.     Sun, although created in Anguilla, was, at all material times, the alter ego and mere instrumentality of Sussex.

40.     Sun, however, is currently dissolved. The officers and directors of Sun are currently unknown to PVC, but PVC believes that after conducting discovery in this matter, PVC will be able to ascertain said directors and officers.     Irrespective of the identity of Sun's directors and officers, the directors and officers of Sun, due to the fact that Sun is now dissolved, are personally responsible for their *pro rata* share of the liability of Sun due to PVC's claim under the Agreements, as described herein, to, at least, the extent of which their pro rata share of Sun's assets were distributed to such individual or entity during the winding up of Sun and, further, to the extent such unknown parties operated Sun while  it was dissolved during the course of performance of the Agreements and/or during the breach of the Agreements.

41.     Sun, who was dominated and controlled by Sussex and as the sole shareholder of Development, exercised complete dominion and control over Development due to the fact that Development is a Sint Maarten closed company.

42.     In or about March, 2006, Sussex, using Sun, caused Development to be reorganized as a closed Sint Maarten company, *i.e* a besloten vennootschap, in order to allow Development to be "shareholder governed," as provided by Dutch Antillean law, by Sun and/or its successor and to provide a streamlined annual statement of accounts, as provided by Dutch Antillean law in order to further attempt to shield its assets from liabilities and defraud its creditors with respect to the Project.

43.     Development is therefore dominated and controlled by Sussex.  Development's office is, in actuality, Sussex's office, located at 207 Grandview Drive, Forth Mitchell, Kentucky, 41017.  See the copy of the Kentucky Secretary of State's Business Services corporate services registry showing Sussex's principle office in **COMPOSITE EXHIBIT F**.  Also, see **EXHIBIT A**.

44.     Development was purposefully undercapitalized by Sussex in order to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants, such as PVC.  A copy of excerpts from the Commercial Register of the Chamber of Commerce of Sint Maarten for Development is attached hereto as **EXHIBIT G.** Also, see **COMPOSITE EXHIBIT F**, showing that the authorized capital of Development is Fifty Thousand Dollars and No/00 (U.S. $50,000.00) and issued capital is Ten Thousand Dollars and No/00 (U.S. $10,000.00).

45.     Sussex commingled its funds with the funds of Development.  A copy of the correspondence to Sussex requesting payment under the Agreements and the Advise of Credit Statement ordered by Sussex for PVC, are attached hereto as **COMPOSITE EXHIBIT H**.

46.     Development cannot conclude agreements whereby the interest exceeds Thirteen Thousand Dollars And No/00 ($13,000.00) without the prior, explicit, approval of Sussex.  See **EXHIBIT G**.

47.     Development merely holds bear legal title to the Project site.  However, all of the funding, supervision, and management of the Project is and was, at all material times, conducted by Sussex.  See **EXHIBIT A** and **EXHIBIT G**.

48.     Development is, therefore, the alter ego and mere instrumentality of Sussex.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

49.    Development acts only as a device or sham existing only to mislead or defraud creditors, hide assets to evade the requirements of state and federal statutes and other perpetrations of fraud.

50.    Construction's sole shareholder is and was, at all material times, Columbia, which is controlled and dominated by Sussex.  Sussex, in order to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants, such as PVC, had created Columbia in Anguilla. A copy of the deed of incorporation of Construction is attached hereto as **EXHIBIT I**.

51.    Columbia, however, is the alter ego and mere instrumentality of Sussex.

52.    Columbia, who was used by Sussex to create Construction in Sint Maarten, is the majority shareholder and/or sole shareholder of Construction.  Sussex used and continues to use Columbia to control and dominate Construction.

53.    Construction is dominated and controlled by Sussex.  Construction's office is, in actuality, Sussex's office, located at 207 Grandview Drive, Forth Mitchell, Kentucky, 41017. See **EXHIBIT B** and **EXHIBIT I**.

54.    Construction was purposefully undercapitalized by Sussex for the purported purposes for which it was formed and for the functions it allegedly fulfills in order to limit both its liability and to defraud, hinder, delay, and frustrate potential claimants, such as PVC.  A copy of an excerpt from the Commercial Register of the Chamber of Commerce of Sint Maarten for Construction is attached hereto as **EXHIBIT J**.  Also, see **EXHIBIT I**.

55.    The directors of Construction and Columbia are the same directors of Sussex See **EXHIBIT B** and **EXHIBIT I**.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

56.    Sussex commingled its funds with the funds of Construction. See **COMPOSITE EXHIBIT H**.

57.    Construction is the alter ego and mere instrumentality of Sussex.

58.    Construction acts only as a device or sham existing only to mislead or defraud creditors, hide assets to evade the requirements of state and federal statutes and other perpetrations of fraud.

59.    Development, Sun, Construction, and Columbia are all shells, alter egos, and mere instrumentalities of the same entity, Sussex.

60.    Since Development, Sun, Construction, and Columbia are merely the instrumentalities and alter egos Sussex, the Agreements' original and actual beneficiary and leading object is and was Sussex and, as such, the benefits of the Agreements were to flow and have flowed solely and directly to Sussex. As such, all of the Sussex Parties, being the mere instrumentalities and shells of Sussex, are liable under the Agreements. See **EXHIBIT A, EXHIBIT B, COMPOSITE EXHIBIT C, EXHIBIT D, EXHIBIT E, COMPOSITE EXHIBIT F, EXHIBIT G, COMPOSITE EXHIBIT H**, and **EXHIBIT I**.

### PVC's Justified Reliance

61.    Relying on the representations, the Agreements and the guarantee, PVC continued to invest substantial funds to increase the size of its manufacturing facilities, purchase extra equipment, machines, and materials, increase its work force, and forewent other, subsequent, business opportunities in order to mobilize its operations to fulfill the demands of the Sussex Parties.

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

## The Sussex Parties' Material Breaches

62.     After the Agreements were executed and contemporaneous to PVC's expenditure of funds, Sussex, again, in its own right and using its instrumentalities and alter egos, went on to repeatedly breach the Agreements. Further, the Sussex Parties, owing to their superior position, due to the location of the Project in a foreign locale and the expenses incurred by PVC in connection with completing the Project, unilaterally modified the Agreements on several occasions, under PVC's protests, in violation of the Agreements.

63.     The Sussex Parties breached ¶ 3.1.1 and ¶ 3.1.2, in the Agreements, by requiring PVC to ship, contrary to the terms of the Agreements, materials and equipment to the Project via the Sussex's Parties shipping agent, Interline/Miami in Florida. Further, the Sussex Parties required PVC to use unsecured shipping containers of Interline/Miami in Florida. A copy of the February 16, 2007 letter from the Sussex Parties to all the contractors and the vendors of the Project requiring them to use Interline/Miami is attached hereto as **EXHIBIT K**.

64.     Upon shipment through Interline/Miami, PVC secured its cargo within the containers it was required to use by Interline/Miami. Interline/Miami and the Sussex Parties then controled the shipping of the freight to Sint Maarten and also controlled the transportation of the freight to the Project site. At the project site, PVC was then allowed to open the containers with its cargo. However, it was a routine occurrence that PVC's cargo would not arrive at the Project intact. Copies of pictures of the cargo shipped through Interline/Miami and copies of pictures of the condition in which PVC found its cargo at the Project are attached hereto as **COMPOSITE EXHIBIT L**.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

65.    The Sussex Parties, in violation of ¶ 3.1.1 of the Agreements required that PVC retain a sub-contractor, Victor Paines, and his company, Construction 2000 s.a.r.l. to install PVC's materials at the Project Site. Victor Paines had previously been terminated by PVC for violating PVC protocols.

66.    The Sussex parties also breached ¶ 5.2 and Article 9 of the Agreements. The Sussex parties made modifications to the Project specifications and required that PVC perform extra work without compensation to meet these changes. These modifications required PVC to expend extra funds to meet the Sussex Parties modifications, for which PVC received no remuneration from the Sussex Parties. The Sussex Parties failed to fully compensate PVC as required in ¶ 5.2 and Article 9 of the Agreements. A sample of the correspondence sent to the Sussex Parties requesting payment for the extra work done in conjunction with the modification to the Project specifications and request of payments and balances owed to PVC are attached hereto as **COMPOSITE EXHIBIT M**. Also, see **COMPOSITE EXHIBIT H**.

67.    The Sussex Parties, in addition, breached Article 10, as modified by the parties through their pattern of dealings and course of performance, of the Agreements. Upon commencement of PVC's performance under the Agreements, PVC and the Sussex Parties modified Article 10 of the Agreements, the progress payments provision. PVC and the Sussex Parties modified Article 10 through their pattern of dealings and course of performance. Article 10 was modified by the Sussex Parties, who agreed with PVC to employ the standard industry practice for paying a contractor, such as PVC, 50% of its fee for performing incremental units of work prior to shipment to a foreign locale and 50% after completion of that increments work. However, after a few months of performing the Agreements as modified, the Sussex Parties

unilaterally and without PVC's approval breached the Agreements, as modified, and sought to enforce the unmodified terms of the Agreements, with respect to Article 10.  PVC, at a severe disadvantage, due to the fact that it was heavily invested in the Project, in which it had already made large investments in materials, equipment, buildings, and work force in order to increase its production capacity to fulfill its obligations under the Agreements, and having sent expensive cargo to the Project through Interline/Miami, found it commercially impracticable to dispute the Sussex Parties wrongful actions.  PVC, under protest, was therefore forced to accept the progress payments under the pre-modification provisions in breach of the Agreements.

68.      The Sussex Parties, in violation of ¶ 3.1.1 of the Agreements, failed to frame the openings on the buildings of the Project to the agreed upon specifications. This failure prevented PVC from installing its windows and doors in a proper, timely manner.  Due to the Sussex Parties failures to properly frame the building openings, PVC was also forced to expend additional resources and experience inordinate delays in installing its windows and doors on the buildings of the Project without compensation from the Sussex Parties.

69.      The Sussex Parties, in violation of ¶ 3.4.1 of the Agreements, terminated the Agreements.  However, the Sussex Parties' termination of the Agreements was a sham. The Sussex Parties had prevented PVC from completing its installation and completion of the punch list by failing to properly construct the buildings on the Project to the proper, agreed upon, specifications, allowing PVC's materials to be stolen while it was en route to the Project by failing to secure the Project as reasonably necessary, and by requiring PVC to retain an unqualified contractor for the Project.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

70.     The true reason for the Sussex Parties decision to unilaterally and wrongfully terminate the Agreements is that the Sussex Parties do not wish to fully compensate PVC for the work it has already performed for the Sussex Parties following the Sussex Parties modification of the Agreements.   Additionally, the Sussex Parties decision to unilaterally and wrongfully terminate the Agreements is due to the fact that the Sussex Parties decided to put a halt to the completion of the Project in order to re-engineer the Project and use materials of inferior quality from other, less expensive, manufacturers and contractors.  The Sussex Parties chose to "value engineer" the Project and to purchase and install the windows and doors from these other manufacturers and contractors in the place of the windows and door it contracted with PVC to manufacture and installed.  A copy of the January 24, 2007 letter from the Sussex Parties to PVC indicating it is delaying the construction of the Project is attached hereto as **EXHIBIT N.**

71.     Due to the Sussex Parties decision to unilaterally and wrongfully terminate the Agreements, the Sussex Parties materially breached the Agreements, and hence Sussex also breached the guarantee, in Florida, by failing to tender payment to PVC in Florida.

### PVC's Damages

72.     Due to all the material misrepresentations described *supra* and breaches of the Agreements and guarantee, PVC has suffered and continues to suffer monetary damages.

73.     Due to the Sussex Parties wrongful actions, all the expenditures PVC spent in order to mobilize itself for the Project and opportunities PVC was forced to forgo caused PVC to suffer monetary damages in addition to the monetary damages PVC suffered in lost profits, lost business, lost income, loss of good will in its business, lost materials, and the materials and labor

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

that remain unpaid for pursuant to the Agreements and the guarantee, as well as other items of damages.

## Legal Violations

## COUNT I
## FRAUD IN THE INDUCEMENT AS TO ALL DEFENDANTS WITH RESPECT TO AGREEMENT1

74.     PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

75.     *Ab initio* to Agreement1, the Sussex Parties represented to PVC in or about February, 2006 that 1) Sussex would guaranty payment and performance of Agreement1 as the primary beneficiary and leading object of Agreement1, that 2) the Sussex Parties would perform their obligations under Agreement1 that 3) Development was in complete control of the Project with respect to Agreement1, and that 4) Sussex would use PVC in other projects owned and operated by Sussex if PVC would perform under Agreement1.

76.     At the time that the Sussex Parties made the above stated misrepresentation to PVC, the Sussex Parties knew that such representations were false.

77.     The Sussex Parties, at the time they made the afore-described representations to PVC, had the secret and undisclosed intention of not honoring the guarantee Sussex made, not fully performing all of the Sussex Parties obligations under Agreement1, and, further, knew that Development was not and would not be in control of the Project with respect to Agreement1.

78.     The afore-described misrepresentations were made by the Sussex Parties for the purpose and with the intent that it would induce PVC to enter into Agreement1.

79.     The afore-described misrepresentations were made to coerce PVC into entering into Agreement1 with an entity that was grossly under-capitalized and would therefore be judgment

proof in the event liabilities arose with respect to the Project. See **EXHIBIT F** and **EXHIBIT G**.

80.    In justifiable reliance upon the Sussex Parties' afore-described misrepresentations, PVC entered into Agreement1. Had PVC known that the afore-described representations were false, PVC would not have entered into Agreement1.

81.    In justifiable reliance upon the Sussex Parties' misrepresentations, which representations where made not only on behalf of Sussex, but also on the remainder of the Sussex Parties, invested substantial funds in order to expand its manufacturing facilities, purchased new equipment and materials, and expanded its work force in order to manufacture and install windows and doors at the Project. Moreover, PVC forwent other profitable business opportunities due to the Sussex Parties afore-described misrepresentations. PVC would not have suffered any of these afore-described misrepresentations had the Sussex Parties not made the afore-described misrepresentations to PVC.

82.    As a direct and proximate result of the Sussex Parties' misrepresentations, PVC sustained monetary damages due to the afore-described actions.

83.    The Sussex Parties' misconduct, as described herein, was willful, wonton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST. MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for rescission of Agreement1,

monetary damages, consequential damages, special damages, and punitive damages upon a proper evidentiary showing, together with such other and further relief as this Honorable Court deems just and proper.

**COUNT II**
**FRAUD IN THE INDUCEMENT AS TO ALL DEFENDANTS WITH RESPECT TO AGREEMENT2**

84.    PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

85.    *Ab initio* to Agreement2, the Sussex Parties represented to PVC in or about February, 2006 that 1) Sussex would guaranty payment and performance under Agreement2 as the primary beneficiary and leading object of Agreement2, that 2) the Sussex Parties would perform their obligations under Agreement2, that 3) Construction was in complete control of the Project with respect to Agreement2, that 4) Construction owned the Project site, and that 5) Sussex would use PVC in other projects owned and operated by Sussex if PVC would perform under Agreement2.

86.    At the time that the Sussex Parties made the above stated misrepresentation to PVC, the Sussex Parties knew that such representations were false.

87.    The Sussex Parties, at the time they made the afore-described representations to PVC, had the secret and undisclosed intention of not honoring the guarantee Sussex made, not fully performing all of the Sussex Parties obligations under Agreement2, knew that Construction was not and would not be in control of the Project with respect to Agreement2, and knew that Construction did not and would not own the Project site.

88.    The afore-described misrepresentations were made by the Sussex Parties for the purpose and with the intent that it would induce PVC to enter into Agreement2.

21
STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

Civil Case No.: 1:07-cv-22257
Amended Complaint

89.    The afore-described misrepresentations were made to coerce PVC into entering into Agreement2 with an entity that was grossly under-capitalized and would therefore be judgment proof in the event a liability arose with respect to PVC. See **EXHIBIT I.**

90.    In justifiable reliance upon the Sussex Parties' afore-described misrepresentations, PVC entered into Agreement2. Had PVC known that the afore-described representations were false, PVC would not have entered into Agreement2.

91.    In justifiable reliance upon the Sussex Parties' misrepresentations, which representations where made not only on behalf of Sussex, but also on the remainder of the Sussex Parties, invested substantial funds in order to expand its manufacturing facilities, purchased new equipment and materials, and expanded its work force in order to manufacture and install windows and doors at the Project. Moreover, PVC forwent other profitable business opportunities due to the Sussex Parties afore-described misrepresentations. PVC would not have suffered any of these afore-described misrepresentations had the Sussex Parties not made the afore-described misrepresentations to PVC.

92.    As a direct and proximate result of the Sussex Parties' misrepresentations, PVC sustained monetary damages due to the afore-described actions.

93.    The Sussex Parties' misconduct, as described herein, was willful, wonton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE,** the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST.

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for rescission of Agreement2, monetary damages, consequential damages, special damages, and punitive damages upon a proper evidentiary showing, together with court costs and such other and further relief as this Honorable Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT AS TO ALL DEFENDANTS UNDER AGREEMENT1**

94.     PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

95.     Following the execution of Agreement1, the Sussex Parties modified Agreement1 through their pattern of dealings and course of performance whereby, among other things, Sussex assumed the role of the principal obligor as the real party in interest and direct beneficiary under Agreement1.

96.     The Sussex Parties breached Agreement1, as modified, by violating ¶ 3.1.1, ¶ 3.1.2, ¶ 3.4.1, ¶ 5.2, Article 9, and Article 10, as modified, made between PVC and the Sussex Parties.

97.     The Sussex Parties breached ¶ 3.1.1 and ¶ 3.1.2 by unilaterally modifying ¶ 3.1.1 and ¶ 3.1.2 of Agreement1, as modified, when the Sussex Parties required PVC to ship materials and equipment to the Project via the Sussex's Parties shipping agent, Interline/Miami.  Further, the Sussex Parties required PVC to use unsecured shipping containers of Interline/Miami in breach of ¶ 3.1.1 and ¶ 3.1.2.  See **EXHIBIT K** and **EXHIBIT L**.

98.     The Sussex Parties breached ¶ 3.1.1 of Agreement1, as modified, when it requested that PVC retain at the Project a sub-contractor, Victor Paines, and his company, Construction 2000 s.a.r.l., who PVC had previously terminated for violating PVC protocols.

99.     The Sussex Parties, in breach of ¶ 3.1.1 of Agreement1, as modified, failed to frame the openings on the buildings of the Project to the agreed upon specifications.  This failure

prevented PVC from installing its windows and doors in a proper, timely manner. Due to the Sussex Parties failures to properly frame the building openings, PVC was also forced to expend additional resources and experience inordinate delays in installing its windows and doors on the buildings of the Project without compensation from the Sussex Parties.

100.    The Sussex Parties, in violation of ¶ 3.4.1 of Agreement1, as modified, terminated Agreement1, as modified.   However, the Sussex Parties' termination of Agreement1, as modified, was a sham. The Sussex Parties, in actuality and in furtherance of its breach of ¶ 3.4.1, had prevented PVC from completing its installation and completion of the punch list by failing to properly frame the openings of the buildings on the Project to the proper, agreed upon, specifications, allowing PVC's materials to be stolen while it was en route to the Project by failing to secure the Project as reasonably necessary, and by requiring PVC to retain an unqualified contractor for the Project.

101.    The Sussex Parties made modifications to the Project specifications and requested that PVC perform extra work, without compensation, to meet these changes.   These modifications required PVC to expend extra funds to meet the modifications, for which PVC received no remuneration from the Sussex Parties. The Sussex Parties failed to fully compensate PVC as required in ¶ 5.2 and Article 9 of Agreement1, as modified, and therefore breached the aforementioned provisions of Agreement1, as modified.  See **COMPOSITE EXHIBIT M** and **COMPOSITE EXHIBIT H.**

102.    Upon commencement of PVC's performance under Agreement1, PVC and the Sussex Parties modified Article 10 of Agreement1, the progress payments provision.  PVC and the Sussex Parties modified Article 10 through their pattern of dealings and course of performance.

Article 10 was modified by the Sussex Parties, who agreed with PVC to employ the standard industry practice for paying a contractor, such as PVC, 50% of its fee for performing incremental units of work prior to shipment to a foreign locale and 50% after completion of that increments work. However, after a few months of performing Agreement1 as modified, the Sussex Parties unilaterally and without PVC's approval breached Agreement1, as modified, and sought to enforce the unmodified terms of Agreement1, with respect to Article 10. PVC, at a severe disadvantage, due to the fact that it was heavily invested in the Project, in which it had already made large investments in materials, equipment, buildings, and work force in order to increase its production capacity to fulfill its obligations under Agreement1, and having sent expensive cargo to the Project through Interline/Miami, found it commercially impracticable to dispute the Sussex Parties wrongful actions. PVC, under protest, was therefore forced to accept the progress payments under the pre-modification provisions in breach of Agreement1, as modified in other respects as described *supra*.

103.   As a result of the Sussex Parties' breach of Agreement1, as modified, PVC has suffered monetary damages by, amongst other things, sustaining the loss of business, the loss of income, the loss of good will in its business, the loss of materials, including the retention of specifically tailored materials which can not be used on other projects, and the retention of labor that remain unpaid for, as well as other items of damages.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST. MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for monetary damages,

consequential damages, special damages, prejudgment interest, court costs, and such other and further relief as this Honorable Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT AS TO ALL DEFENDANTS UNDER AGREEMENT2**

104.    PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

105.    Following the execution of Agreement2, the Sussex Parties modified Agreement2 through their pattern of dealings and course of performance whereby, among other things, Sussex assumed the role of the principal obligor as the real party in interest and direct beneficiary under the Agreement2.

106.    The Sussex Parties breached Agreement2, as modified, by violating ¶ 3.1.1, ¶ 3.1.2, ¶ 3.4.1, ¶ 5.2, Article 9, and the modification of Article 10 made between PVC and Construction.

107.    The Sussex Parties breached ¶ 3.1.1 and ¶ 3.1.2 by unilaterally modifying ¶ 3.1.1 and ¶ 3.1.2 of Agreement2, as modified, when the Sussex Parties required PVC to ship materials and equipment to the Project via the Sussex's Parties shipping agent, Interline/Miami.  Further, the Sussex Parties required PVC to use unsecured shipping containers of Interline/Miami in breach of ¶ 3.1.1 and ¶ 3.1.2.  See **EXHIBIT K** and **EXHIBIT L**.

108.    The Sussex Parties breached ¶ 3.1.1 of Agreement2, as modified, when it requested that PVC retain at the Project a sub-contractor, Victor Paines, and his company, Construction 2000 s.a.r.l., who PVC had previously terminated for violating PVC protocols.

109.    The Sussex Parties, in breach of ¶ 3.1.1 of Agreement2, as modified, failed to frame the openings on the buildings of the Project to the agreed upon specifications. This failure prevented PVC from installing its windows and doors in a proper, timely manner.  Due to the Sussex Parties failures to properly frame the building openings, PVC was also forced to expend

26
STOK & ASSOCIATES, P.A.

additional resources and experience inordinate delays in installing its windows and doors on the buildings of the Project without compensation from the Sussex Parties.

110.    The Sussex Parties, in violation of ¶ 3.4.1 of the Agreements, as modified, terminated Agreement2, as modified.    However, the Sussex Parties' termination of Agreement2, as modified, was a sham. The Sussex Parties, in actuality and in furtherance of its breach of ¶ 3.4.1, had prevented PVC from completing its installation and completion of the punch list by failing to properly construct the openings on the frames of the buildings on the Project to the proper, agreed upon, specifications, allowing PVC's materials to be stolen while it was en route to the Project by failing to secure the Project as reasonably necessary, and by requiring PVC to retain an unqualified contractor for the Project.

111.    The Sussex Parties made modifications to the Project specifications and requested that PVC perform extra work, without compensation, to meet these changes.    These modifications required PVC to expend extra funds to meet the modifications, for which PVC received no remuneration from the Sussex Parties. The Sussex Parties failed to fully compensate PVC as required in ¶ 5.2 and Article 9 of Agreement2, as modified, and therefore breached the aforementioned provisions of Agreement2, as modified.  See **COMPOSITE EXHIBIT M** and **COMPOSITE EXHIBIT H.**

112.    Upon commencement of PVC's performance under Agreement2, PVC and the Sussex Parties modified Article 10 of Agreement2, the progress payments provision.  PVC and the Sussex Parties modified Article 10 through their pattern of dealings and course of performance. Article 10 was modified by the Sussex Parties, who agreed with PVC to employ the standard industry practice for paying a contractor, such as PVC, 50% of its fee for performing incremental

units of work prior to shipment to a foreign locale and 50% after completion of that increments work. However, after a few months of performing Agreement2, as modified, the Sussex Parties unilaterally and without PVC's approval breached Agreement2, as modified, and sought to enforce the unmodified terms of Agreement2, with respect to Article 10. PVC, at a severe disadvantage, due to the fact that it was heavily invested in the Project, in which it had already made large investments in materials, equipment, buildings, and work force in order to increase its production capacity to fulfill its obligations under Agreement2, and having sent expensive cargo to the Project through Interline/Miami, found it commercially impracticable to dispute the Sussex Parties wrongful actions. PVC, under protest, was therefore forced to accept the progress payments under the pre-modification provisions in breach of Agreement2, as modified in other respects as described *supra*.

113. As a result of the Sussex Parties' breach of Agreement2, as modified, PVC has suffered monetary damages by, amongst other things, sustaining the loss of business, the loss of income, the loss of good will in its business, the loss of materials, including the retention of specifically tailored materials which can not be used on other projects, and the retention of labor that remain unpaid for, as well as other items of damages.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST. MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for monetary damages, consequential damages, special damages, prejudgment interest, court costs, and such other and further relief as this Honorable Court deems just and proper.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

## COUNT V
## FRAUD IN THE INDUCEMENT AS TO SUSSEX WITH RESPECT TO SUSSEX'S GUARANTEE

114.    PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

115.    *Ab initio* to PVC's entry into the guarantee with Sussex, Sussex represented to PVC in or about February, 2006 that Sussex would guaranty payment and performance under the Agreements as the primary beneficiary and leading object of the Agreements.

116.    At the time that the Sussex made the above stated misrepresentation to PVC, the Sussex knew that such representation was false.

117.    The afore-described misrepresentation was made by Sussex for the purpose and with the intent that it would induce PVC to contract with Sussex.

118.    In justifiable reliance upon the Sussex Parties' afore-described misrepresentation, PVC contracted with Sussex.  Had PVC known that the afore-described representation was false, PVC would not have contracted with Sussex.

119.    In justifiable reliance upon Sussex's afore-described misrepresentation, PVC constructed specially tailored materials for the Project, hired extra laborers, expanded its production facilities, and forwent other profitable business opportunities.

120.    As a result of Sussex's misrepresentations, PVC has suffered monetary damages by, amongst other things, sustaining the loss of business, the loss of income, the loss of good will in its business, the loss of materials, including the retention of specifically tailored materials which can not be used on other projects, and the retention of labor that remain unpaid for, as well as other items of damages.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

121.    Sussex's misconduct, as described herein, was willful, wonton, and malicious.   If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendant, COLUMBIA SUSSEX CORPORATION, for monetary damages, consequential damages, special damages, and punitive damages upon a proper evidentiary showing, together with court costs and such other and further relief as this Honorable Court deems just and proper.

### COUNT VI
### BREACH OF GUARANTEE
### AS TO SUSSEX

122.    PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

123.    Sussex promised to PVC that if PVC entered into the Agreements, Sussex would guarantee that Development and Construction would fulfill their obligations under same.

124.    Sussex made this guarantee in order to receive the substantial and immediate pecuniary benefits of PVC's performance under the Agreements.

125.    PVC entered into the Agreements based, in part, on this guarantee.

126.    Sussex received the full and direct benefit of PVC's performance under the Agreements, namely the manufacturing and installation of the windows and doors for the Project. Thus, the leading object of the Agreements is Sussex.

127.    Development and Construction have now refused to perform their obligations under the Agreements.

128.    Sussex, although being the guarantor of Development and Construction, has also refused to satisfy the obligations under the Agreements.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 • (305) 935-4440 • FAX: (305) 935-4470 • E-Mail: support@stoklaw.com

*Civil Case No.: 1:07-cv-22257*
*Amended Complaint*

129.    Due to Sussex's breach of its guarantee, PVC has been monetarily damaged.

130.    As a result of the Sussex Parties' breach of the guarantee, PVC has suffered monetary damages by, amongst other things, sustaining the loss of business, the loss of income, the loss of good will in its business, the loss of materials, including the retention of specifically tailored materials which can not be used on other projects, and the retention of labor that remain unpaid for, as well as other items of damages.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendant, COLUMBIA SUSSEX CORPORATION, for money damages, pre-judgment interest, court costs, consequential damages, special damages, and such other and further relief as this Honorable Court deems just and proper.

## COUNT VII
### DECLARATORY JUDGMENT
### PURSUANT TO 28 U.S.C. §2201
### AS TO ALL DEFENDANTS

131.    PVC realleges and incorporates paragraphs 1 through 31, 33 through 35, and 61 through 72 as if fully set forth herein.

132.    This is an action for declaratory and further relief pursuant 28 U.S.C. §2201 and 28 U.S.C. §2202.

133.    This Court has the jurisdiction to declare the rights, status and other equitable or legal relationships in a case, such as the instant one, upon which an actual controversy exists, whether or not such relief is or could be sought.  This Court may render declaratory judgments on the existence, or non-existence, of any immunity, power, privilege or right; or of any fact upon which existence or non-existence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege or right, now exists or will arise in the future.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

134.   This Court has the power to grant such further necessary or proper relief based on any declaratory judgment or decree which may be granted herein after a reasonable notice and hearing against the parties named herein.

135.   PVC is in doubt and uncertain as to its powers, rights, status or other legal or equitable rights and interests with regard to the tortious, fraudulent, and illegal actions the Sussex Parties set forth *supra*. Such conduct includes PVC's belief that such entities named herein are responsible for the afore-described conduct due to the fact that PVC believes, but is uncertain, that such entities are mere instrumentalities of Sussex.

136.   PVC is uncertain, that Development, Sun, Columbia, and Construction are the alter egos of Sussex and that PVC can pierce the corporate veil and hold Sussex personally responsible for Development's, Sun's, Columbia's, and Construction's duties and obligations, respectively, for the following reasons: (1) Development, Sun, Columbia, and Construction commingle their funds with Sussex, (2) Development, Sun, Columbia, and Construction exist only in name, being directed solely by Sussex employees, out of Sussex's office, (3) Development, Sun, Columbia,  and Construction fail to operate their business with the legally required corporate formalities, (4) Development, Sun, Columbia, and Construction operate under the name of Sussex without even the formality of a separate corporate existence, (5) Development, Sun, Columbia, and Construction are inadequately capitalized, (6) Sussex is the true owner of Development's, Sun's, Columbia's, and Construction's alleged properties, (7) Sussex allowed Sun to become dissolved and/or Sussex dissolved Sun, and, as such, (8) Development, Sun, Columbia, and Construction are operated as the alter ego and mere instrumentality of Sussex.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

137.    Additionally, since Sun is a dissolved entity and, although its directors and officers are currently unknown to PVC, PVC believes that after discovery of this matter is undertaken, it will come to light that the directors and officers of Sun are the same as those for Sussex.  As such, PVC believes, but is uncertain, that irrespective of the identity of Sun's directors and officers, the directors and officers of Sun, due to the fact that Sun is now dissolved, are personally responsible for their *pro rata* share of the liability Sun has due to PVC's claim, as described herein, to, at least, the extent of which their *pro rata* share of Sun's assets were distributed to such individual or entity during the winding up of Sun and, further, to the extent such unknown parties operated Sun while it was dissolved during the course of performance of the Agreements and/or during the breach of the Agreements.

138.    As a result of the foregoing, PVC is in doubt as to its rights, status, privileges and immunities and therefore has an actual, present and immediate need for a declaration of its rights, status or other legal or equitable relations and interests regarding the foregoing matters.

139.    If the application is sufficient, this Court should declare that Development, Sun, Columbia, and Construction are the alter egos of Sussex and that therefore Sussex should be held responsible for the corporate obligations of Development , Sun, Columbia, and Construction for the above stated reasons.

140.    Since Sun's officers and directors are not currently known to PVC and the fact that PVC believes that through discovery in this instant matter PVC will be able to ascertain said officers and directors, PVC reserves the right to amend this Amended Complaint in accordance therewith.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

**WHEREFORE,** the Plaintiff, PVC WINDOORS, INC, respectfully requests that this Honorable Court take jurisdiction over this cause and enter its Order declaring the parties' rights, status or other legal or equitable relations, and enter the following declaration: Defendant BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., Defendant BABBITBAY BEACH CONSTRUCTION, N.V., Defendant COLUMBIA PROPERTIES ST. MAARTEN LLC, and Defendant SUN MARTIN LIMITED are the alter egos and mere instrumentalities of Defendant COLUMBIA SUSSEX CORPORATION and therefore Defendant COLUMBIA SUSSEX CORPORATION is to be held personally responsible for the corporate obligations of Defendant BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., Defendant BABBITBAY BEACH CONSTRUCTION, N.V., Defendant COLUMBIA PROPERTIES ST. MAARTEN LLC, and Defendant SUN MARTIN LIMITED and that the directors and officers of Sun, which is a dissolved entity, are personally responsible for the obligations of Sun.

### The Alternative Counts[4]

### COUNT VIII
### UNJUST ENRICHMENT
### AS TO ALL DEFENDANTS[5]

141.    PVC realleges and incorporates paragraphs 1 through 28, 32 through 60, and 73 as if fully set forth herein.

142.    PVC has conferred a benefit upon the Sussex Parties, namely PVC's services and materials performed and produced pursuant the Sussex Parties requests, as described *supra*.

---

[4] These alternative counts are plead to the alternative of Counts I, III, and IV.
[5] If the Court determines that all or some of the Sussex Parties are not the real party in interest with regard to the Agreements and/or if the Court determines that the guarantee is non-enforceable, then PVC sets forth the following claim.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 • (305) 935-4440 • FAX: (305) 935-4470 • E-Mail: support@stoklaw.com

143.    The Sussex Parties were aware of the services and materials which PVC performed and produced at their request. Moreover, PVC at the special insistence and request of the Sussex Parties performed and produced under the Agreements.

144.    As a result of PVC's services and materials performed and produced pursuant to the Sussex Parties request, including the services and materials performed and produced under the Agreements, the Sussex Parties received the full benefit of such services and materials.

145.    The Sussex Parties voluntary accepted and retained the benefits of the services and materials performed and produced by PVC.

146.    Because of the facts and circumstances occurring between the parties, namely the Sussex Parties fraudulent and other wrongful actions as described *supra*, the Sussex Parties have been unjustly enriched at the expense and detriment of PVC.

**WHEREFORE**, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST. MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for money damages, pre-judgment interest, court costs, and such other and further relief as this Honorable Court deems just and proper.

**COUNT IX**
**QUANTUM MERUIT**
**AS TO ALL DEFENDANTS**[5]

147.    PVC realleges and incorporates paragraphs 1 through 28, 32 through 60, and 73 as if fully set forth herein.

---

[5] If the Court determines that all or some of the Sussex Parties are not the real party in interest with regard to the Agreements and/or if the Court determines that the guarantee is non-enforceable, then PVC sets forth the following claim.

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com

148.    PVC performed services and provided materials to Sussex at Sussex's special insistence and request.  PVC performed the services and produced the materials pursuant to the Sussex Parties' requests, as described *supra*, which services and materials Sussex assented to and the benefits of which services and materials Sussex received.

149.    Since PVC rendered services under circumstances in which the parties understood and intended that compensation would be paid to PVC, Sussex owes PVC the reasonable value of such services and materials, together with prejudgment interest.

**WHEREFORE,** the Plaintiff, the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST. MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for money damages, pre-judgment interest, court costs, and such other and further relief as this Honorable Court deems just and proper.

## COUNT X
## OPEN ACCOUNT
## AS TO ALL DEFENDANTS[7]

150.    PVC realleges and incorporates paragraphs 1 through 73 as if fully set forth herein.

151.    The Sussex Parties owe PVC in excess of Thirty-Four Thousand Dollars ($34,000.00) for work already performed at the Project, together with interest.  *See* Composite **Exhibit M**.

**WHEREFORE,** the Plaintiff, PVC WINDOORS, INC, demands judgment against the Defendants, BABBITBAY BEACH DEVELOPMENT CORPORATION, B.V., SUN MARTIN LIMITED, BABBITBAY BEACH CONSTRUCTION, N.V., COLUMBIA PROPERTIES ST.

---

[7] If the Court determines that all or some of the Sussex Parties are not the real party in interest with regard to the Agreements and/or if the Court determines that the guarantee is non-enforceable, then PVC sets forth the following claim.

36

MAARTEN LLC, and COLUMBIA SUSSEX CORPORATION, for money damages, pre-judgment interest, together with such further relief as this court deems just and proper.

### DEMAND FOR JURY TRIAL

The Plaintiff, PVC WINDOORS, INC, hereby demands trial by jury of all of those issues so triable.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was mailed to:  AMY L. CHRISTIANSEN, ESQ. and GEORGE M. VINCI, JR., ESQ., 360 Central Avenue, Suite 1550, St. Petersburg, Florida  33701 this 31st day of October, 2007.

Respectfully submitted,

STOK & ASSOCIATES, P.A.
Attorneys for the Plaintiff
2875 N. E. 191st Street
Suite 304
Aventura, Florida  33180
Tel.:   (305) 935-4440

BY: _____
ROBERT A. STOK, ESQ.
Florida Bar No. 857051

STOK & ASSOCIATES, P.A.
2875 N.E. 191ST STREET, SUITE 304, AVENTURA, FLORIDA 33180 * (305) 935-4440 * FAX: (305) 935-4470 * E-Mail: support@stoklaw.com